(85 South. 745)

## JEFFERSON COUNTY v. STILES, Probate Judge. (6 Div. 88.)

(Supreme Court of Alabama. May 20, 1920.)

**1. Counties ⬥➡183(1) — Bonds must be authenticated by proper officers.**

Where the law prescribes a mode for the issuance, including execution, of bonds of a governmental subdivision, it is necessary to their validity that they be authenticated by the officer or officers directed to perform that ministerial act.

**2. Counties ⬥➡183(1) — Bonds of Jefferson county to be authenticated by president of board of revenue.**

Under Loc. Acts 1898–99, pp. 1115–1118, and Code 1907, §§ 171, 172, bonds of the county of Jefferson must be authenticated by the president of the board of revenue, and not by the judge of probate.

**3. Statutes ⬥➡147 — Saving clauses in Code held not to preserve statutes repealed.**

Saving clauses of Code 1907, § 10, designed to protect from repeal by the Code local, private, or special statutes did not operate to preserve or re-enact statutes that were repealed by the Legislature of 1903.

Appeal from Circuit Court, Jefferson County; John C. Pugh, Judge.

Petition by the county authorities of Jefferson county for mandamus to require Hon. J. P. Stiles, as Judge of Probate, to sign certain bonds. From a judgment denying the writ, petitioner appeals. Reversed and remanded.

W. K. Terry, of Birmingham, for appellant.

The statute designates the Judge of Probate as the person to sign such bonds, and the court erred in declining to require him to do so. Sections 171, 172, Code 1907; 110 U. S. 162, 3 Sup. Ct. 555, 28 L. Ed. 105.

Joseph R. Tate, of Birmingham, for appellee.

The president of the board of revenue was the person to sign the bond. Section 3321, Code 1907; sections 6 and 12, p. 233, Terry's Local Laws of Jefferson County.

McCLELLAN, J. [1] The single question propounded by this appeal is whether it is the duty of the judge of probate or the president of the board of revenue of Jefferson county to give his signature to the bonds of the county of Jefferson, authorized by the electorate to be issued to provide funds with which to construct, etc., public roads. Code, §§ 158 to 170, inclusive. Where the law prescribes the mode for the issuance, including execution, of bonds of a governmental subdivision, it is necessary to their validity that they be authenticated by the officer, or of-

ficers, directed to perform that ministerial act. Bissell v. Spring Valley Township, 110 U. S. 162, 169, 3 Sup. Ct. 555, 28 L. Ed. 105.

[2, 3] By the act approved February 18, 1899 (Local Acts.1898–99, pp. 1115–1118, Terry's Local Laws of Jefferson County,·pp. 233–235), the then existing court of county commissioners of Jefferson county was abolished, and in its stead a board of revenue was created, consisting of "four persons and a president." Section 6 of this act reads:

"Be it further enacted, that the president of said board shall be its presiding officer, and shall have the same power and authority as other members in passing upon all questions, and shall sign the minutes of the proceedings of the board, and shall sign all warrants drawn on the county treasury and all orders for the payment or disbursement of money or funds of said county, and it shall be his duty to receive and prepare business and obtain information for the sessions of the said board, and to see to the execution of all orders thereof, and to report to the board all infractions of the revenue law in said county of which he can obtain authentic information. He shall exercise all the powers and perform all the duties required of the probate judge as to matters coming before the courts of county commissioners."

Section 12 of this act is as follows:

"Be it further enacted, that the court of county commissioners of Jefferson county be, and the same is hereby abolished, and that the probate judge of said county is hereby relieved of his duty to the court of county commissioners of said county, which shall hereafter be performed by the president of the board. This act shall take effect immediately after its approval."

In recognition of the original limitations provided in subdivision 17 of section 104 and in section 222 of the Constitution of 1901, the Legislature of 1903 (Gen. Acts 1903, pp. 90–94), through a general act authorizing county elections for, and governing the issuance of county bonds, made these prescriptions with respect to their efficient execution:

"Sec. 13. All bonds issued under the authority of this act shall be signed by the probate judge and countersigned by the treasurer of the county in which the same are issued and the official seal of the probate court shall be impressed upon or affixed to the same.

"Sec. 14. All bonds so issued shall have attached to the same interest coupons, which shall be signed by the probate judge and the treasurer of the county issuing the same, but the signatures of the probate judge and treasurer may be printed or lithographed in fac simile upon said coupons."

These sections of the act of 1903 became, four years later, sections 171 and 172 of the Code of 1907. Prior to the adoption of the Constitution of 1901, as well as to the enactment of 1903, ante, the practice was to au-

---

⬥➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

thorize the issuance of bonds by special or local acts, and therein to provide the particular mode for the execution of such obligations, the custom being to require the fac simile signatures of the judges of probate and county treasurers upon county bonds.

At the time the act approved February 18, 1899, became effective we are not advised that there was any law, general or local, particularly authorizing or directing the judge of probate or the president of the board of revenue to give his signature to county bonds issued to afford funds wherewith to construct, etc., public roads in Jefferson county. In such matters the Legislature may, of course, designate the county official, who shall authenticate validly issued obligations of the county to provide funds for county purposes. There is no specific authorization or direction in the act of February 18, 1899, with respect to the issuance or execution of county bonds. Aside from the enumeration of duties of the president of said board in section 6, the lawmakers in that act were content to confer upon the president of the board such powers and to impose such duties as were then conferred or imposed upon the probate judge of Jefferson county with respect to the relation of that official to the court of county commissioners of Jefferson county. In other words, we do not find in the act approved February 18, 1899, any original or conferred power or duty in the president of the board of revenue with respect to the issuance of execution of bonds of the county of Jefferson. The result, therefore, is that the general act of 1903, now sections 171 and 172 of the Code of 1907, defines the duty and designates the county officials of Jefferson county who must afford their signatures for bonds now authorized to be issued. It is suggested that the provision of section 10 of the Code of 1907, saving from repeal by this Code "local, private or special statutes," forbids the according of an effect to sections 171 and 172 to repeal the local act approved February 18, 1899. In addition to the reason already given, viz. that the local act approved February 18, 1899, did not authorize or require the president of the board of revenue to afford his signature for the authentication of county bonds—since no such power or authority then rested upon the judge of probate whose powers and duties were conferred, in the circumstances stated in the act, upon the president of the board of revenue—it may be noted that, if the act of February 18, 1899, had had that effect, the general act of 1903, in force four years before the Code of 1907 became operative, repealed the local act of February 18, 1899, in so far as the authentication of county bonds is concerned, the indicated saving clauses of section 10 of the Code of 1907 being designed to protect from repeal by this

Code "local, private or special statutes" that were out of harmony with the provisions of the Code, and did not operate to preserve or re-enact statutes that were repealed by the Legislature of 1903. It is therefore clear that, in any event, section 10 of the Code is without application to the statutory status made by the act approved February 18, 1899, and the general act of 1903, cited above.

It results from these considerations that the court below erred in its conclusion of law that the president of the board of revenue of Jefferson county, and not the judge of probate, was the official of that county whose duty it is to authenticate these bonds. The converse is true. The court, therefore, erred in sustaining demurrers to the petition and in dismissing the petition. The order or decree is reversed, and the proceeding is remanded for further action in accord with this opinion.

Reversed and remanded.

ANDERSON, C. J., and SAYRE, GARDNER, and BROWN, JJ., concur.