## BISSELL *v.* SPRING VALLEY TOWNSHIP.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

Submitted January 2d, 1884.—Decided January 21st, 1884.

*Estoppel—Kansas—Municipal Bonds—Statutes.*

1. A statute of the State of Kansas directed county commissioners of a county (when the electors of a township in the county should have determined, in the manner provided in the act, to issue bonds in payment of a subscription to railway stock), to order the county clerk to make the subscription, and to cause the bonds to be issued in the name of the township, signed by the chairman of the board, and attested by the clerk under the seal of the county : *Held,* That the signature of the clerk was essential to the valid execution of the bonds, even though he had no discretion to withhold it.

2. When bonds have been issued by a township in payment of a subscription to railway stock, under a statute which makes the signature of a particular officer essential, without the signature of that officer they are not the bonds of the township; and the municipality is not estopped from disputing their validity by reason of recitals in the bond, setting forth the provisions of the statute and a compliance with them.

3. A statute of Kansas authorized the auditor of a State to receive from the holder of bonds issued by a township in payment of a subscription to

railway stock his bonds, and to register the same, and directed the auditor to notify the officers issuing the bonds of the registration of the same ; and further, directed such officers to enter the fact in a book kept by them for the purpose ; and then provided that " the bonds shall thereafter be considered registered bonds:" *Held,* That until the notice to the township officers, and their entry of the registration in their books, the bonds were not to be regarded as registered bonds within the intent of the statute, and as entitled to the benefits of the act ; and that no estoppel against disputing the validity of the bonds by reason of a certificate of registration arose. *Lewis* v. *Commissioners of Barbour County,* 105 U. S. 739, distinguished from this case.

This was an action brought by the plaintiff in error to recover the amount of certain interest coupons attached to municipal bonds, which, it is alleged in the petition or complaint, were made, issued, and delivered by the defendant, a municipal corporation of Kansas, to aid in the construction of a railroad running within and through its corporate limits, under and in pursuance of an act of the legislature of the State of Kansas entitled " An Act to enable municipal townships to subscribe for stock in any railroad, and to provide for the payment of the same," approved February 25th, 1870, under and in pursuance of an order of the board of county commissioners of the county of Cherokee, and under and in pursuance of a vote of more than three-fifths of the qualified voters of the township, voting at an election duly held therein for such purpose, being negotiable bonds payable to bearer.   It was further alleged :

" That afterwards, to wit, on December 15th, A. D. 1871, each of the said bonds, with all the interest coupons thereto attached, was put upon the market and sold and delivered to bona fide purchasers for value, the same passing from hand to hand like other negotiable securities.

" That afterwards, to wit, on April 11th, A. D. 1872, each of the said bonds, with all the interest coupons thereto attached, was duly registered in the office of the auditor of the State of Kansas, according to law, and the fact that each of the said bonds was so registered was then and there, under the hand and official seal of the said auditor, in writing duly certified and indorsed upon each of the said bonds, a copy of which said certificate and indorse-

ment is filed herewith, made part hereof, and marked 'Exhibit B.'"

It was also alleged that after the issuing and delivering of the said bonds, and before the maturity, either of the bonds or of any of the coupons sued upon, they were sold and delivered to the plaintiff for the price of ninety cents on the dollar thereof in cash.

The following is the form of the bond:

"No.    ]    UNITED STATES OF AMERICA.    [$1,000.

"COUNTY OF CHEROKEE, STATE OF KANSAS.

"*Spring Valley Township Bonds.*

"Know all men by these presents that Spring Valley Township, county of Cherokee, State of Kansas, acknowledges itself and is firmly bound to the Atlantic and Pacific Railroad Company in the sum of one thousand dollars, which sum the said township therein promises to pay to the said Atlantic and Pacific Railroad Company, or bearer, at the office of Northrop & Chick, in the city of New York and State of New York, on the fifteenth day of December, 1886, together with the interest on the first day of July in each and every year until this bond matures, at the rate of seven per cent. per annum, which interest shall be payable annually on the presentation and delivery at said office of the coupons of interest hereto attached.

"This bond being issued under and pursuant to an order of the board of county commissioners of Cherokee County, in the State of Kansas, by virtue of an act of the legislature of the State of Kansas, approved February 25th, 1870, entitled 'An Act to enable municipal townships to subscribe for stock in any railroad, and to provide for the payment of the same;' and authorized by a vote of the people taken on the 4th day of February, 1871, as required by law, upon the proposition to subscribe one hundred and fifty thousand dollars to aid in the construction of the said railroad, which proposition was voted upon on the day aforesaid, and three-fifths of the votes of said township being cast in favor of said proposition.

"In testimony whereof the said board of county commissioners of Cherokee County have executed this bond by the chairman of

said board, under the order thereof, signing his name hereunto, and by the clerk of said board attesting the same and affixing the seal of said board.

" This done at Columbus, Cherokee County, this 15th day of December, 1871.

"  { SEAL OF CHEROKEE }
   { COUNTY, KANSAS. }                        WM. H. CLARK,

     " *Chairman Board of County Commissioners.*
" J. G. DUNLAVY, *County Clerk.*"

The certificate of registration was as follows :·

" I, A. Thoman, auditor of the State of Kansas, do hereby certify that this bond has been regularly and legally issued, that the signatures thereto are genuine, and that such bond has been duly registered in my office in accordance with an act of the legislature entitled ' An Act to authorize counties, incorporated cities, and municipal townships to issue bonds for the purpose of building bridges, aiding in the construction of railroads, or other works of internal improvement, and providing for the registration of such bonds, the registration of other bonds, and the repealing of all laws in conflict therewith, approved March 2d, 1872.

" Witness my hand and official seal this 11th day of April, 1872.
" [SEAL.]                        A. THOMAN, *Auditor of State.*"

The defendant in answer to the petition pleaded the following defence :`

" That it ought not to be charged with the said supposed debt by virtue of the said supposed bonds and coupons, because it, by its attorneys, says that J. G. Dunlavy, whose name appears on said bonds and coupons as county clerk, never signed his name thereto or thereon, nor ever authorized any party or parties to sign his name thereto or thereon, and that said signature is not his signature.

" Nor did he affix or authorize to be affixed the seal of said county of Cherokee to said bonds or coupons."

To this the plaintiff demurred. · The demurrer was overruled, and the plaintiff declining to reply, judgment was rendered for the defendant, to review which this writ of error was

prosecuted. The assignment of error relied on was that this defence being insufficient in law the demurrer thereto should have been sustained and judgment rendered for the plaintiff.

*Mr. Alfred Ennis* for plaintiff in error, among other contentions made the following : The seal of the county being affixed to the bonds, was *prima facie* evidence that it was so affixed by the proper authority, and the burden is upon the defendant in error to establish the contrary. 1 Kyd on Corporations, 268 ; Angell and Ames·on Corporations, § 224; *Lovett* v. *Steam Saw Mill Association*, 6 Paige, 54, 60; *Clark* v. *Imperial Gas Light and Coke Company*, 4 B. & A. 315 ; *Solomon's Lodge* v. *Montmollin*, 58 Ga. 547; *Reed* v. *Bradley*, 17 Ill. 321; *St. John's Church* v. *Steinmetz*, 18 Penn. St. 273. The bonds having been issued and delivered by the legal representatives of the defendant in error, with the name of the county clerk signed, and the seal of the county affixed thereto, estops the defendant in error from denying the genuineness of the signature of such clerk, or the authority for affixing such seal, as against the plaintiff in error, a *bona fide* holder for value. *Town of Weyauwega* v. *Ayling*, 99 U. S. 112. The recitals upon the face of the bonds that they were issued according to law, and that the board of county commissioners had executed the same by the chairman of the board, under the order thereof, signing his name thereto, and by the county clerk attesting the same and affixing the seal of the county thereto, estops the defendant in error from denying the facts so recited, as against the plaintiff in error, a *bona fide* holder for value. *Insurance Company* v. *Bruce*, 105 U. S. 328; *Harter* v. *Kernochan*, 103 U. S. 562; *Menasha* v. *Hazard*, 102 U. S. 81; *Hackett* v. *Ottawa*, 99 U. S. 86 ; *Town of Weyauwega* v. *Ayling*, 99 U. S. 112; *Supervisors* v. *Galbraith*, 99 U. S. 214 ; *Wilson* v. *Salmanca Township*, 99 U. S. 499; *County of Warren* v. *Marcy*, 97 U. S. 96 ; *San Antonio* v. *Mehaffy*, 96 U. S. 312; *Town of Coloma* v. *Eaves*, 92 U. S. 484; *Town of Venice* v. *Murdock*, 92 U. S. 494; *County of Moultrie* v. *Rockingham Ten Cent Savings Bank*, 92 U. S. 631 ; *Marcy* v. *Township of Oswego*, 92 U. S. 637; *Humboldt Township* v. *Long*, 92 U. S.

642; *Pompton* v. *Cooper Union*, 101 U. S. 196 ; *The Mayor* v. *Lord*, 9 Wall. 409 ; *Supervisor* v. *Schenck*, 5 Wall. 772 ; *Moran* v. *Commissioners Miami County*, 2 Black, 723 ; *Bissell* v. *Jeffersonville*, 24 How. 287 ; *Knox County* v. *Aspinwall*, 21 How. 539. The registration of the bonds in the office of the auditor of State, according to law, was a final and conclusive determination that the same had been regularly and legally issued, and that the signatures thereto were genuine, and such facts cannot now be inquired into, as against the plaintiff in error, a *bona fide* holder for value. See Bigelow on Estoppel, 464 ; Herman's Law of Estoppel, 509 and 512 ; *Moran* v. *The Commissioners of Miami County*, 2 Black, 722 ; *Zabriskie* v. *Cleveland, &c., Railroad Company*, 23 How. 400 ; *Commissioners of Knox County* v. *Aspinwall*, 21 How. 539 ; *Rogers* v. *Burlington*, 3 Wall. 654 ; *Pendleton County* v. *Amy*, 13 Wall. 297 ; *Keithsburg* v. *Frick*, 34 Ill. 405 ; *Royal British Bank* v. *Turquand*, 6 El. & Bl. 327 ; *Hale* v. *Union, &c., Insurance Company*, 32 N. H. 295 ; *Trustees* v. *Mayor et al. of Aberdeen*, 13 S. & M. 645.

*Mr. W. H. Rossington, Mr. J. R. Hallowell,* and *Mr. Chas. B. Smith,* for defendant in error.

Mr. JUSTICE MATTHEWS delivered the opinion of the court. After stating the above recited facts he continued :

The plaintiff in error contends that this judgment is erroneous on several grounds, which we proceed to consider in their order.

1. It is claimed, in the first place, that the defence is not sufficient, because the signature of the county clerk is not essential to the validity of the bonds, nor that the county seal should have been affixed thereto by him.

The statute of Kansas, Laws of Kansas of 1870, ch. 90, p. 189, under which the bonds in question purport to have been issued, contains the following provisions ;

" SECTION 1. Whenever fifty of the qualified voters, they being freeholders, of any municipal township in any county in the State, shall petition in writing the board of county commissioners

of such county to submit to the qualified voters of such township a proposition to take stock, in the name of such township, in any railroad proposed to be constructed into or through such township, and shall in such petition designate the railroad company and the amount of stock proposed to be taken, and the mode and terms of payment for the same, together with the conditions of such subscription, if any, it shall be the duty of such board of county commissioners to cause an election to be held by the qualified voters of such township, to determine whether such subscription shall be made : *Provided*, That the amount of bonds voted by any township shall not be above such an amount as will require a levy of more than one per cent. per annum on the taxable property of such township to pay the yearly interest on the amount of bonds issued.

" SECTION 5. If three-fifths of the electors voting at such election vote for the subscription of the stock, the board of county commisioners shall order the county clerk to make such subscription in the name of the township, and shall cause such bonds as may be required by the terms of said vote and subscription to be issued in the name of such township, to be signed by the chairman of the board, and attested by the clerk, under the seal of the county : *Provided*, That the commissioners shall not cause such bonds to be issued until the railroad shall have been completed through the township voting such bonds, or to such point in said township as may be conditioned in said bonds."

It is argued, as the board of county commissioners is the prescribed authority which orders every step to be taken to issue the bonds, and as the clerk acts only as directed by it, and signs and seals the bonds merely as a witness of its orders and acts, that it is only what that board does and directs which becomes important, and that if it issues bonds with the name of the clerk signed and the seal of the county attached, it is not material whether the clerk writes his name or affixes the seal, or whether it is done by another.

It is alleged in the petition that the defendant corporation, the municipal township, made, issued, and delivered the bonds on which the suit is founded, and that it was done under and in pursuance of an order of the board of county commissioners

of the county of Cherokee. But it is sufficient to say, that the power of the board of county commissioners to bind the township is conferred by the statute to be exercised only in the mode pointed out, and the attesting signature of the clerk is as material to the integrity and validity of the bonds as is that of the chairman of the board of county commissioners. The township had no power to bind itself for the purpose of aiding in the construction of a railroad, by subscription to its capital stock and the issue of bonds to pay for the same, except as authorized by this statute; the board of county commissioners of the county did not represent the township for any other purpose, and could not execute its power to issue bonds by instruments not conforming to the substantial requirements of the law. That law required the bonds to be executed in a particular manner, and the signature of the clerk is essential to the valid execution of them, even though he had no discretion to withhold it. *Anthony* v. *County of Jasper*, 101 U. S. 693–697; *McGarrahan* v. *Mining Company*, 96 U. S. 316.

Admitting that the board could cause his signature to be affixed, without his assent, by another specially or generally appointed to do so; still, that it was so affixed in the present case does not appear as matter of fact; and if the fact could be supplied by supposition, the signature would still, in law, be the signature of the clerk. But the answer denies that fact, and the demurrer admits the truth of the denial. So that the defence set forth in the answer is, in law, that the bonds sued on are not the bonds of the township, and that is admitted by the demurrer to be true.

2. This disposes of the second ground of the contention of the plaintiff in error, which is, that the township defendant is estopped by the bonds and the recitals contained in them to dispute their validity.

But there can be no ground for such an estoppel unless the bonds, which are supposed to effect it, are the bonds of the defendant. We have just seen that, by the pleadings, they are admitted not to be such; and the position of the plaintiff in error is not improved by the supposition that he is an innocent holder for value. If the bonds are not the act and deed of the

defendant, they do not bind it at all, and cannot be made obligatory by their own contents.

3. It is argued, however, finally, that the defendant township is estopped to dispute the validity and obligation of these bonds by the fact and certificate of registration.

The statute of Kansas, Laws of Kansas of 1872, ch. 68, p. 110, to authorize counties, &c., to issue bonds, and providing for their registration, &c., contained ample and specific provisions, according to which municipal corporations were authorized to lend their credit to aid in the construction of works of internal improvement. It required that when bonds were to be issued for such purpose, the officers of the municipal body making them should deliver them in the first instance to the treasurer of State, to be held by him in escrow, or to an agent agreed on, until full compliance with the conditions of the agreement on which they were to issue, when the treasurer or agent was required to deliver them to the parties entitled to them. The officers of the municipal corporation were also required to make registration thereof in a book kept for that purpose, and to certify a statement of the same to the auditor of State ; and, if within thirty days after their issue, the holder of such bonds should present them to the auditor of State for registration, he was required, upon being satisfied that such bonds had been issued according to the act, and that the signatures thereto of the officers signing the same were genuine, to register the same in his office, in a book kept for that purpose, in the same manner that such bonds were required to be registered by the officers issuing the same, and also to certify upon such bonds the fact that they had been regularly and legally issued, that the signatures thereto were genuine, and that such bonds had been registered in his office according to law.

The act also makes provision for the registration of bonds not issued under it, but issued either before its enactment or in pursuance of agreements entered into before it took effect. The fifteenth section is as follows :

"SECT. 15. That the holder of bonds heretofore issued, or that

may hereafter be issued, in pursuance of any contract heretofore made under any law in this State, may have the benefits of this act by having such bonds registered in the office of said auditor of State as provided herein for the registration of bonds (issued) by virtue hereof. It shall be the duty of the auditor of State, upon the registration of any bonds not issued under the provisions of this act, within ten days thereafter, to notify the officers issuing the same of such registration, which fact shall be entered by such officers in a book wherein the record of such bonds is kept, and such bonds shall thereafter be considered registered bonds."

Under this section it is claimed that the bonds sued on were registered, having been issued prior to the passage of the registration act of 1872; and it is insisted, upon the authority of the case of *Lewis* v. *Commissioners,* 105 U. S. 739, that the registration is conclusive of their validity, as against the defence made in the answer.

It is shown, however, by a comparison of the fifteenth section with the other sections of the act in reference to registration, that distinct and diverse provisions are made for different classes of bonds, those issued under the act and those previously issued or agreed to be issued under prior acts. As to the former class, the bonds authorized are to be registered, in the first instance, according to the mandate of the twelfth section, by the officers of the municipality acting in that behalf, who are required to transmit to the auditor of State a certified statement of the number, amount, and character of the bonds so issued, to whom issued, and for what purpose, which statement is required to be attested by the clerk of the municipal corporation issuing the same under its corporate seal. The registration thus provided for consists of two parts, that which is recorded by the officers of the corporation in their books and that which the auditor records in his own, and in that case the last step is taken by the auditor, who certifies it on the bonds themselves, presented by the holder for that purpose. This certificate is intended to be based not merely upon what the auditor himself has done, but upon the knowledge officially

certified to him of what had previously been done by the officers of the municipal corporation issuing the bonds.

But as to the other class of bonds, those not issued under the act of 1872, the order of the steps in registration is reversed. The first record is made by the auditor on presentation of the bonds by the holder for that purpose. Within ten days thereafter he is required by the fifteenth section of the act to notify the officers issuing the same of such registration by him, which fact, it is provided, shall be entered by such officers in a book wherein the record of such bonds is kept, and such bonds, the statute then proceeds to declare, shall thereafter be considered registered bonds. That necessarily means that they shall not be so considered until the happening of that event; and it is that complete and perfected registration, and that alone, which confers upon the holder of such bonds the benefits of the act.

The bonds that were in controversy in the case of *Lewis* v. *Commissioners*, 105 U. S. 739, were issued under the act of 1872, and their registration was governed by the provisions of the statute relating to that class. The bonds on which the present suit is based were issued under the act of 1870, and belong to the class the registration of which is governed by the provisions of the fifteenth section of the act.

It is alleged in the petition that "each of said bonds, with all the interest coupons thereto attached, was duly registered in the office of the auditor of the State of Kansas according to law, and the fact that each of the said bonds was so registered was then and there, under the hand and official seal of the said auditor, in writing, duly certified and indorsed upon each of the said bonds," and a copy of the certificate and indorsement is set out as already exhibited. But it is not alleged that the auditor notified the officers of Cherokee County of this record, nor that these officers entered the fact in the record kept by themselves; and without these additional steps, what was done by the auditor was incomplete and ineffective. Without showing compliance with these requisitions, the bonds cannot be considered registered bonds, nor entitled as such to the benefits of the act.

If complete and conclusive effect were, on the contrary, given

to the *ex parte* record of the auditor of State, as is claimed for it, the obvious design and just purpose of the statute would be not secured, but subverted; and municipal corporations might be subjected to liability for bonds purporting to be issued by them, which, in fact and in law, were not their obligations, by virtue of a proceeding of which they had no notice, resulting in an adjudication which they had no opportunity of contesting. A construction of the statute that necessarily leads to that conclusion is not warranted by its terms, and would be repugnant to fundamental principles of common right. If the registration of bonds issued under the act itself is to have the force of an adjudication by the auditor, the preliminary record by the officers of the municipal corporation transmitted to him must be the indispensable foundation of his jurisdiction, without which he cannot lawfully act; and as to bonds issued, as were these now in suit, under previous statutes, the action of the auditor is itself but the preliminary proceeding, of which confirmation by the subsequent record of the officers issuing them is essential to its efficacy as a registration. If these officers refuse to recognize the registry of the auditor, whether rightfully or wrongfully, the holder loses no rights. He has the bonds as he acquired them, and may test the liability of the corporation by judicial proceedings. If, on the other hand, the statute is construed to allow him, by a proceeding before the auditor, conclusively to fix the liability of the municipal corporation, without notice and without a hearing, certainly, in respect to bonds previously issued, it would be open to the gravest objections on constitutional grounds, for, if a law cannot impair the obligation of a contract, neither can it create one, or, by a mere *fiat*, take from a party an existing and meritorious defence.

It appears then, by the record in this cause, that the bonds sued on are not the obligations of the defendant in error.

*The judgment in its favor is, therefore, affirmed.*