JOHN D. JINKINS, as Tax Collector of Seminole County, Florida, *Appellant,* v. C. W. ENTZMINGER, B. G. SMITH, H. H. PATTISHALL, JOE CAMERON, and REX PACKARD, *Appellees.*

135 So. 785.

Division B.

Opinion filed June 24, 1931.

Petition for rehearing denied August 10, 1931.

*Shepard & Wahl,* of Cocoa, for Appellant;

*H. T. White,* of Sanford, and *Wilson & Boyle,* of Sanford, for Appellees.

DAVIS, J.—The appellees, as complainants in the court below, brought this suit to restrain the collection of a one-mill tax which had been levied against all the taxable property in Seminole County, Florida, under authority of a levy made by order of the Upper St. Johns River Navigation District. The court below overruled general and special demurrers to the bill of complaint and the defendant tax collector appealed.

The Upper St. Johns River Navigation District is a body corporate, created by Chapter 11431, Special Acts of 1925, Laws of Florida. It constitutes a special taxing district consisting of the Counties of Brevard and Seminole and the object and purpose of the Act as declared therein was to promote the maritime shipping and commercial interests of the Upper St. Johns River Navigation District, particularly by improving and maintaining navigation on the Upper St. Johns River and connecting the same with the Indian River by a navigable canal or waterway. Such purpose was specifically declared in the Act to be for the pub-

lic convenience and welfare and for the public utility and benefit.

For the purpose of carrying the Act into effect the Commissioners of the District, provided for therein, were authorized to make and execute contracts, hire and discharge engineers, superintendents, mechanics, clerks, and other employees, and fix their compensation, and were empowered to levy a tax of not less than three nor more than eight mills on all the taxable property within the district. This tax was required to be based upon the same assessment and general scheme of taxation provided for the general State and County taxes on the same property, and such taxes were required to be extended on the tax rolls in the same manner as the general State and County taxes are required to be extended. The appellant, as tax collector of Seminole County, was accordingly required to collect any taxes imposed by the Upper St. Johns Navigation District which had been placed upon his tax roll. For this reason it was sought to enjoin him in the particulars above specified when the Commissioners of the District ordered a one-mill tax to be levied on the property in Seminole County for the year 1928.

The complainants in their bill of complaint assigned forty reasons why the tax should be enjoined. Eleven grounds of unconstitutionality of the statute are set up. Conceding that it is reasonably probable that any one statute could have so many constitutional defects, it is not necessary to discuss each of them in detail in this opinion.

The first serious objection urged is that the Legislature had no authority to create a special taxing district of the kind and for the purpose mentioned in the Acts under attack, and no authority to authorize it to assess and collect a district-wide ad valorem tax for its benefit.

In view of the nature of the enterprise contemplated by the Act and the determination of the Legislature that the execution of such enterprise would be for the public con-

venience and welfare and for the public utility and benefit, it is obvious that the creation of such district was well within the legislative power under our previous decisions on the subject of creation of taxing districts. Pinellas Park Drainage District v. Kessler, 69 Fla. 558, 68 So. 668; Hunter v. Owens, 80 Fla. 812, 86 So. 839; Martin v. Dade Muck Land Co., 95 Fla. 530, 116 So. 449; Bannerman v. Catts, 80 Fla. 170, 85 So. 336. The Legislature in this instance fixed the object and character of the tax and prescribed a maximum rate of not exceeding eight mills as being within the authority of the District Commissioners to levy in any one year to meet the expenses of the District. That the levy of an ad valorem tax in the nature of a special assessment, and in consideration of the common and general benefits expected to accrue from the accomplishment of the purpose of the District, is constitutional can not be questioned in view of the holding of this Court in the cases of Richardson v. Hardee, 85 Fla. 510, 96 So. 290, and Martin v. Dade Muck Land Co., *supra*.

Historically, the power of the Legislature to establish taxing districts for particular public purposes is clear. It is only necessary that such districts be created directly by the Legislature or that they be created by a proper proceeding under authorization by a valid statute, including notice and hearing in the latter instance. See Spencer v. Merchant, 125 U. S. 345, 31 L. Ed. 763. In particular cases a special taxing district should not be held invalid if the law itself (in the case of a District directly created by the Legislature) or the action authorized to be taken or threatened under a statute providing for the existence of the district, is not illegal or a palpably arbitrary or a plain abuse of power.

Taxing districts have generally been of two principal classes. The first of these is for the accomplishment of some particular public improvement where the character of the work necessary to realize the improvement is peculiarly

temporary and special or where there is necessarily a particular improvement confined to some special work or construction. In such cases the taxing district itself is viewed as a mere instrumentality to distribute present cost according to assumed benefits, and if the effect is to impose a grossly unjust or unequal burden on some of the property taxed, though benefited, relief will be given in the special case. Consolidated Land Co. v. Tyler, 88 Fla. 14, 101 So. 280; Willis v. Road & Bridge District, 73 Fla. 446, 74 So. 495; Thomas v. Kansas City Southern Ry., 261 U. S. 155; Browning v. Hooper, 269 U. S. 396, 70 L. Ed. 330.

The second class of taxing districts is where the purpose of creating the district is clearly general and permanent in nature. In such a district the fact that one tax payer's benefit to a particular piece of property may be remote or doubtful, or his burden heavy, will not entitle him to relief against an authorized tax lexied to bring about common and general benefits to the district and property situated therein, considered as a whole. In this class of taxing district the common, general or indirect benefit to the taxpayer arising from ownership of property in the benefited district itself, is deemed a sufficient constitutional benefit to support the levy and collection of an ad valorem tax spread over the entire district, particularly when the taxpayer necessarily has a remoter local or political interest in the general public welfare of the locality as enhanced by the public improvement contemplated to be brought about by the instrumentality of the district. Martin v. Dade Muck Land Co., supra; Houck v. Little River Drainage District, 239 U. S. 254, 60 L. Ed. 266; Valley Farms Co. v. Westchester, 261 U. S. 155, 67 L. Ed. 585; Milheim v. Moffatt Tunnel District, 262 U. S. 710; 67 L. Ed. 1194; Miller & Lux v. Sacramento Drainage District, 256 U. S. 129; 65 L. Ed. 859; Spencer v. Merchant, 125 U. S. 345, 31 L. Ed. 763.

From a consideration of the foregoing, it appears that the

District contemplated and created by the Act constituting the Upper St. Johns River Navigation District was of the second class. It was therefore within the power of the Legislature to authorize it to levy an ad valorem tax for its general purposes, provided it adopted a proper method of prescribing and collecting such tax and limited the maximum amount thereof, which appears to have been done by Chapter 11431, as well as Chapter 12446, which amended it. It was also within the power of the Legislature to anticipate and provide for the preliminary expenses of the district without making any improvement even if the proposed improvement should be found impractical, and to authorize the levy of a tax to pay the preliminary expenses incurred prior to abandonment. W. C. Road Imp. District v. Mo. Pac. R. R. Co., 157 Ark. 304, 248 S. W. 563.

It is next urged that Chapter 12446, Acts of 1927, which amended the 1925 law, is unconstitutional because such amendatory Act was not properly passed in the Legislature. The record shows that such Act originated as House Bill 1389. There is no question raised that House Bill 1389 was duly passed by the House of Representatives in the first instance and thereafter properly passed by the Senate as required by the constitution.

The ground of objection is that after the bill had once been properly passed by the House of Representatives and by the Senate and referred to the Joint Committee on Enrolled Bills of the House and Senate that upon motion of Senator Parrish, such bill was recalled for reconsideration from the Joint Committee on Enrolled Bills, to which it had been referred but not yet presented to the Governor.

In this connection the argument is that the Legislature having once duly passed such bill through the House and Senate and having referred the same to its Joint Committee on Enrolled Bills to be presented to the Governor, the Senate lost control of the measure and that it was no longer within the power of the Senate to have such bill recalled

from the Joint Committee on Enrolled Bills or to order the final vote on the passage of same reconsidered, or to have the bill placed back on second reading for the purpose of amendment, or thereafter to amend it.

The Journals of the House and Senate show that the bill in question was first passed without amendment. It was then recalled to the Senate and upon motion of Senator Parrish it was reconsidered. It further shows that after reconsideration, the bill was by unanimous consent placed back upon second reading, at which time an amendment was offered by Senator Parrish, as follows:

Add to Section 14 the following:

"Provided, that no tax or back tax shall be levied, assessed and collected under any of the provisions of this Act unless a majority of the qualified voters of said district voting in such election vote for the issuance of the bonds of said district referred to in Section 10 of this Act; except, however, the Board of Commissioners of Upper St. Johns River Navigation District shall have the power and are hereby authorized to levy, assess and collect a tax against such portions of said district as have not heretofore paid a tax to liquidate its pro-rata share of the indebtedness incurred under the act creating said district should the bonds to be voted on as provided by Section 10 of this Act be defeated by a majority of the voters of said district participating in said election."

The amendment was adopted, after which the rules were again waived, the bill placed upon third reading and read a third time in full and duly passed by the Senate, the yeas and nays being taken and recorded thereon. After this the bill was sent back to the House of Representatives for concurrence in the Senate amendment. The House concurred in the amendment, but did not do so by taking and recording a yea and nay vote on such amendment.

We are unable to perceive where any constitutional provision was violated in this procedure. The Joint Committee on Enrolled Bills is a creature of the Legislature and con-

ceivably the Legislature might dispense with it if it so desires. The purpose of such a committee is to preserve the integrity of the bill as passed and to effectuate compliance with Section 17 of Article 3 of the Constitution, which provides that every bill, after its passage, shall be signed by the presiding officer of the respective House and by the Secretary of the Senate and the Clerk of the House of Representatives, after which it shall be presented to the Governor as required by Section 28 of the same Article.

In the instant case it does not appear that the bill in question had been signed by the presiding officers of each House and by the Secretary of the Senate and the Clerk of the House of Representatives and presented to the Governor at the time the motion to reconsider its passage in the Senate was made. The bill was still in the possession of the Legislature up until the time of its actual presentation to the Governor and as such was under the control of the legislative bodies, whose concurrence is necessary to enact a law.

This Court has held that the Legislature has power to reconsider its action even on a constitutional amendment (Crawford v. Gilchrist, 59 So. 963, 64 Fla. 21, Ann. Cas. 1914B, 916), and the Constitution itself expressly authorizes the Legislature to make its own rules of procedure. See Sec. 6, Art. III of the Constitution.

The Joint Committee on Enrolled Bills was a part of the Senate organization and there was no constitutional principle violated by the Senate in directing such committee to return the bill to the Senate for further consideration, even though the bill had actually been enrolled, signed by all necessary officers and was about to be presented to the Governor but was still in the Committee's possession. It may be conceded that such practice is not in accordance with accepted parliamentary usage, but insofar as organic law is concerned, it was not unconstitutional.

The concurrence of the House of Representatives in the

Senate amendment adopted to the bill was not required to be by yeas and nays as this Court has held in the case of State v. Dillon, 42 Fla. 95, 28 So. 781. The fact that the amendment was adopted after reconsideration does not alter the rule laid down in that case.

The final contention which merits discussion in this opinion is the proposition that Chapter 12446, Acts of 1927, even if validly enacted, did not designate the portion of the District that had not theretofore paid a tax, nor the portion which had paid a tax, nor what amount had been paid or for what purpose it had been levied, and that therefore no tax can be levied under it.

The particular provision of the statute which requires construction here is that which was added by the amendment the full text of which is quoted above in connection with the preceding point.

That amendment, properly construed, authorized the District to levy an annual navigation tax of not more than eight mills in the event that bonds should be approved by the electors as provided in the amended act, but limited such levy to an amount required to pay up the outstanding indebtedness in the event that bonds should not be authorized. The language of the proviso is that the Upper St. Johns River Navigation District shall be authorized to levy, assess and collect ''a tax against such portions of said District as have not heretofore paid a tax to liquidate its prorata share of its indebtedness incurred under the Act creating said District.''

Under the terms of the original Act a levy of not less than three nor more than eight mills was authorized, and such levy was required to be made on the whole District which consisted of Seminole and Brevard Counties. The levy actually made was four mills, which was collected in Brevard County but never collected in Seminole County. Under the original Act the levy in each county for the purposes of the District was required to be equal, and since it appears

that Brevard County levied and collected a four-mill tax, it was likewise the duty of the officials of Seminole County to collect the same amount of tax.

The fact that Seminole County officials failed to extend the tax that was levied as its part of the tax of the district would only defeat the collection of the tax for the time being but would not relieve such County from ultimately being required to pay the tax under the original law if it was constitutional, as we have just held it was. Stieff v. Hartwell, 35 Fla. 606, 17 So. 899. In the latter case it was held, "a tax assessment is not invalid because not completed during a year for which it was made. As a general rule a provision in a statute naming the time when an act is to be done in the assessment and collection of taxes is a direction, and not a limitation."

Realizing that the uncollected four-mill tax which had already been levied in Seminole County might ultimately be enforced by judicial proceedings to compel its extension on the tax roll and its collection by the tax collector of Seminole County, the author of the Senate amendment to the amendatory act evidently had in mind a reduction of the *authorized* levy against Seminole County to such an extent as would provide only for the payment of the indebtedness of the District in the event that such indebtedness should be found to be less than the amount which would be realized by the full four-mill tax. The right of the Legislature to thus re-adjust the amount of the tax to be levied and collected as a district tax cannot be successfully questioned.

Seminole County was the only part of the District which had not theretofore paid a tax. Seminole County's pro rata share of the indebtedness which had been incurred under the Act creating the District was at least potentially equal to the proceeds of the amount of tax which had been authorized by the original Act and levied against both counties but paid by only one county, namely, four mills.

The purpose of the Legislature, however, appears to have been not to have the full four mills unnecessarily levied in Seminole County, even though Brevard County had already paid a full four-mill tax as its contribution toward the preliminary expenses of the District unless the actual requirements of the District should make it necessary. Thus construing the Act, as we must under the circumstances, the invalidity of the Act relied on by the appellee does not appear and objections on that ground must accordingly be overruled.

Other objections, including one based upon the supposed invalidity of the 1927 Act on account of an insufficient title, have been carefully considered by the Court but do not merit detailed discussion in this opinion. It is sufficient to say that we do not sustain them.

It does not appear that either of the Acts under attack is unconstitutional for any of the reasons assigned, nor does it appear that the tax levy attempted to be made under them was beyond the scope of the authority of the Commissioners of the Upper St. Johns River Navigation District. The District is specifically empowered to levy taxes to enable it to liquidate its debts and wind up its affairs. This authority to levy taxes to pay the outstanding debt is not so unlimited as to render the Act unconstitutional because the amount of any one year's levy is limited to eight mills. The time during which this levy may be continued is limited by the amount of outstanding indebtedness which may remain unsatisfied so as to warrant it. If it should be sufficiently made to appear that the outstanding indebtedness of the District has been fully discharged this would be a ground of objection which could be successfully urged in a proper case as it would then go to the right of the Commissioners to order any tax levy at all. In such case there would be a total lack of sufficient basis to warrant a levy.

The Commissioners were authorized, had it been necessary to do so in order to liquidate the debts of the District, to

first levy a tax in as great amount in Seminole County as had been already levied and collected in Brevard County, namely, four mills. They levied, however, only one mill. Consequently, the complainants are not in position to complain of a levy which is materially less than that which would have been authorized under the circumstances insofar as the tax limit prescribed by statute was concerned.

While we have held that the original Act creating the Upper St. Johns River Navigation District is constitutional, it appears that by the 1927 amendment thereto the execution of the accomplishment of the purpose for which the district was formed is made to depend upon the issuance of bonds to procure the funds with which to accomplish the work. Without the accomplishment of the work, the supposed benefits fail. Without the issuance of bonds, the work can not be accomplished. Without the ratifying vote of the people in favor of the bonds, the bonds cannot be issued. So the practical operation and effect of the referendum election at which the bonds were defeated, is to destroy *in futuro* the accomplishment of the purposes of the district. The effect of this is to render the district incapable in law of making further tax levies in consideration of benefits which can not possibly be realized under the present statutes.

But the district in the first instance was authorized to contract indebtedness and was given taxing power to pay its expenses so incurred. The fact that the principal object of the creation of the district must be abandoned, is no excuse for failure of the district to pay its just debts. The levy of necessary taxes for that purpose is not only expressly preserved in the amendatory statute, but would continue under the original statute as a part of the obligation of the contract of creditors which would be protected by the State and Federal Constitutions from being impaired by withdrawal of the only means by which payment could

be made, namely, the exercise of the taxing power originally given.

We have already seen that a tax for preliminary expenses of a taxing district can be validly laid, even though the district is wholly abandoned. Western Crawford Road Improvement District v. Mo. Pacific R. R. Co., 157 Ark. 204, 248 S. W. 563; Orr v. Allen, 248 U. S. 35, 62 L. Ed. 109, affirming 245 Fed. 486. After such authority has once been given in connection with the power to contract debts, which have been contracted, it cannot be withdrawn by the Legislature to the impairment of the rights of creditors. Furthermore, it is held that the taxing power in such cases is not exhausted by a single levy, which does not actually produce the money necessary to pay the debts, because a portion of the levy is never collected.

The rule is that a statutory obligation of a public corporation or public quasi corporation to pay its debt, or to fix a rate of levy necessary to pay its debt, is not satisfied by an assessment and rate levy necessary to pay the debt if the taxes are collected, but requires that there be a sufficient assessment and levy and *collection* of the taxes as levied to actually pay the debt. Norris v. Montezuma Irrigation District, 248 Fed. 369, approved by U. S. Supreme Court by denial of certiorari in 248 U. S. 569.

But except to complete payment of outstanding indebtedness, the taxing power of the Upper St. Johns River Navigation District must be regarded as having ceased because the object of the district itself has failed. We have no doubt that in a proper case, any attempted levy of taxes to carry on such district for other than the purpose of paying its debts can be successfully resisted by appropriate proceedings brought for that purpose.

For the reasons pointed out the decree which overruled the general and special demurrers should be reversed with directions to sustain the general demurrer for want of equity. Permission should be given to amend the bill so

that further proceedings may be had in accordance with this opinion, if complainants conceive that they can state a case supported by facts in hand, which will meet the test we have referred to in connection with this kind of litigation.

Decree reversed and cause remanded for further proceedings in accordance with this opinion.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.