MARTHA BRIGHT FARMS, INC., *et al.*, v. BROWARD COUNTY PORT AUTHORITY, *et al.*

158 So. 70.
Opinion Filed September 4, 1934.

*McCune, Hiaason & Fleming,* for Appellants;

*Shutts & Bowen, Charles A. Carroll* and *C. L. Chancey,* for Appellees.

PER CURIAM.—By Chapter 10552, Acts of 1925, the then existing municipality of the City of Fort Lauderdale was abolished and a new chapter with elaborate administrative and taxing powers was enacted for the City of Fort Lauderdale, in Broward County, Florida. Chapter 11519, Acts of 1925, established the municipality of City of Hollywood, in Broward County, Florida, with extensive administrative and taxing powers. The validity of this charter was sustained against the attacks made in State *ex rel.* Attorney General v. Johns, 92 Fla. 187, 109 So. 228.

In 1926 under statutory provisions contained in their respective charters, the City of Hollywood and the City of Fort Lauderdale, two separate municipalities situated on and adjacent to the Atlantic coast in the State of Florida, issued bonds of the cities respectively. Proceeds of the bonds were used for the construction of a public deep-water port and harbor located in part in each city, and each city confined its construction activities to the portion of the port and harbor within its limits. The port or harbor was at first called "Lake Mabel," now "Port Everglades." City of Fort Lauderdale and City of Hollywood each issued two million dollars of bonds for port construction, which bonds were validated by statutory judicial proceedings under Sections 5106 (3296) *et seq.* C. G. L., before the bonds were

sold, and the validating decrees were not appealed from. The bonds, issued by City of Fort Lauderdale were validated by Chapter 12739, Acts of 1927. See also Chapter 12877, Acts of 1927, as to the indebtedness of City of Hollywood.

Chapter 12562, Acts of 1927, established the Broward County Port District, a governmental taxing unit covering territory embracing the City of Hollywood, the City of Fort Lauderdale and other areas including several towns and much unimproved and unoccupied area extending westward towards the Everglades. The governing authority of the District was the "Broward County Port Authority," a statutory corporation composed of four freeholder electors of the district. The governmental district was established by statute for the purpose of acquiring, constructing or completing, maintaining and supervising a deep water port or harbor with auxiliary powers and privileges within the district. Chapter 12562 was amended by Chapter 13950, Acts of 1929, enlarging and specifying more definitely the functions of the district. Pursuant to statutory authority the municipal port or harbor was taken over and the bonds assumed by the district. See also Chapter 1394, Acts of 1929. Chapter 15107, Acts of 1931, enacted a new charter of powers conferred upon Broward County Port District with broad specific powers and obligations including the following:

"Section 4. That the title, rights, ownership of property, uncollected taxes due, claims, judgments, decrees and choses in action held or owned by the Broward County Port District, or its governing body, the Broward County Port Authority, shall pass to and be vested in the Broward County Port Authority, the governing body of the new Broward County Port District, established and organized

under this Act to take the place of and succeed the Broward County Port District hereby abolished.

"Section 5. That no obligations or contracts of the Broward County Port District and/or the Broward County Port Authority, including bonds heretofore issued or authorized or assumed by the Broward County Port District shall be impaired or avoided by this Act, but any such debts and obligations shall pass to and be binding upon the new Broward County Port District and/or Broward County Port Authority, which is hereby organized and created. That the bonded indebtedness of the City of Fort Lauderdale, and of the City of Hollywood, Florida, heretofore assumed by the Broward County Port District under the Port Act herein repealed shall be the valid and binding obligation of the Broward County Port District hereby created and established."

In 1932 upon petitions filed by holders of harbor bonds issued by the City of Fort Lauderdale and the City of Hollywood respectively, and assumed by the Broward County Port District, under statutory authority, alternative writs of mandamus were issued by this court requiring the obligations of the bonds to be met by ad valorem taxation throughout the district as provided by the statutes controlling the subject. The writs were addressed to the governing authority of the Broward County Port District, to-wit: the Broward County Port Authority, a corporation, and the four members composing such corporation under the statute creating the Broward County Port District.

A petition by taxpayers of Broward County Port District for leave to intervene to resist the granting of a peremptory writ of mandamus in one of the cases was denied without prejudice. State *ex rel.* v. Ryan, *et al.*, 103 Fla. 1136, 139 So. 138. The City of Hollywood was made a party respondent. State *ex rel.* v. Ryan, 106 Fla. 386, 143 So. 297.

The defenses pleaded in the mandamus cases in effect challenged the validity of the harbor bonds as issued by the City of Fort Lauderdale and the City of Hollywood, respectively, and also the validity of the assumption by the district of obligation to pay the bonds. Such defenses were adjudged to be insufficient and overruled, the court holding the bonds were legal obligations of the Broward County Port District. State *ex rel.* Davis, v. Ryan, *et al.*, ...... Fla., ......, 151 So. 416; 158 So. 62; State, *ex rel.* Ake v. Broward County Port Authority, ___ Fla. ___, 151 So. 718, 158 So. 62. (These two cases have not been released by Court.)

In the opinion filed December 7, 1933, in Davis-Ryan case above cited, at page 418 So. Rep., it is said:

"Whether or not individual landowners having properties situate within, and subject to, the tax burdens of the Broward County port district, have a justiciable cause of complaint against the exercise of the district's taxing power with respect to their individual properties, because of a palpable abuse of the legislative power in the inclusion of their lands within the boundaries of the district, is a question not capable of being tried in a mandamus proceeding of this kind; therefore the special defenses sought to be interposed herein on their behalf by the respondent district officials must be stricken, without prejudice to the individual rights of any of such taxpayers to pursue appropriate proceedings to have any complaint made by them duly adjudicated."

Rehearings were asked for in the mandamus cases against the officials of the Broward County Port District. There was a full reargument on the entire merits of the cases as presented.

In the opinion denying rehearings, filed May 15, 1934, but not yet reported, it is stated:

"It is not made to appear as against the statutes and the court decrees that the municipal bonds were issued to obtain money or credit for private parties. * * * Neither the constitution nor the statute forbids private parties to contribute to the public improvement, no private rights being acquired in the public project by the contributors.

"There are averments in the answers of respondents to the effect that J. W. Young and his corporations acquired the bed of Lake Mabel and surrounding lands aggregating approximately 12,000 acres, the greater portion of the land being low, swampy marsh land which required drainage and filling in to make it habitable; that under glowing advertisements the land was subdivided, and sales to the public aggregated $75,000,000.00; that when the City of Hollywood was created in 1925, J. W. Young and his companies owned 80% of the land in the city and that J. W. Young and his employees were named commissioners of the city for four years; that J. W. Young and his companies undertook to build a deep water harbor at Lake Mabel, now known as 'Port Everglades,' at a cost of $15,000,000.00, and issued and sold to the public $5,000,000.00 of bonds of the Hollywood development and Harbor Company; that the project failed; that some time prior to the 18th day of June, 1926, the said J. W. Young and his Hollywood Allied Companies for the purpose of relieving himself and his corporations from the burden of defraying the cost of the construction of said deep water harbor at Lake Mabel and for the purpose of fulfilling and carrying out their said scheme and plan so advertised and published as aforesaid for the construction of said deep water harbor at Lake Mabel the purpose of which was by the said J. W. Young and his Hollywood Allied Companies calculated to be of great private gain and financial benefit to the said J. W. Young and his Hollywood Allied Companies, commenced negotiations with

the officials of the said Cities of Hollywood and Fort Lauderdale, which last named city is a municipal corporation organized and existing under a special charter in the State of Florida, to-wit: Chapter 10552, Special Acts of 1925, with the view of converting the construction of said deep water harbor into a public enterprise, and of inducing the said Cities of Fort Lauderdale and Hollywood of defraying and paying a portion of the costs and expenses of constructing said deep water harbor; that said negotiations resulted in the execution of an agreement bearing date June 28, 1926, commonly known as the tripartite agreement.'

"The above and other like and kindred averments do not render illegal the issues of municipal bonds involved in this case, when no illegality is shown in the statutes or the proceedings had thereunder resulting in the bond issues. It is not shown that J. W. Young or his employees acted for either city in issuing the municipal bonds or in making contracts with J. W. Young or his corporations.

"The tripartite agreement of June 28, 1926, contains, among others, these statements:

" '2. That the construction of a deep water harbor at Lake Mabel is a feasible and practicable project of statewide —even nationwide importance, and such construction will be particularly advantageous to the municipalities herein named.

" '3. That the contracting parties deem it to the best interest of the public that said harbor be constructed, maintained and operated as a public enterprise.'

"This indicates the nature of the project as a public improvement. The agreement contemplated the issue of $2,000,000.00 of bonds by each of the two cities to be used in the public harbor improvement project, the proceeds of the bonds to be used within the limits of the city issuing the bonds. The corporations and the individuals who were

the parties of the third part to the tripartite agreement owned lands used in the harbor improvement, and they were to contribute one-third of the cost of the project, and in return for the deposit of excavated material on lands of the third parties, to convey to each city land therein to be used for the sole, exclusive and only purpose of constructing municipal docks, piers, slips, wharves and warehouses, or else to revert. The private parties were to have credit for what they had expended in constructing the harbor. Such parties of the third part were also to dedicate to the public for harbor purposes portions of the bed of Lake Mabel owned by the parties of the third part; and to dedicate stated land for street purposes. The private parties were given no rights of ownership, use or control in the public harbor project.

"Contracts for the harbor improvements were to be between the cities severally and the construction contractors, the contracts by each city having relation to improvements within its limits. The corporations and the individual who were parties of the third part to the agreement with the two cities, were to have no right of private ownership or user in the harbor, the subject of the public improvement. Thus, the harbor, a public improvement located in two cities, was under the control of the two cities; the corporations and the individuals who were the parties of the third part to the tripartite agreement of June 28, 1926, being merely contributors to the construction of the public improvement without any rights in its ownership, use or management except that common to the public.

"An agreement dated October 27, 1927, between the Broward County Port Authority, the two cities and the several private parties, substituted the Port Authority for the two cities, and is of similar import to the agreement of June 28, 1926. The Port Authority had statutory author-

ity to assume the project then being constructed with appropriate power of taxation for the authorized purposes."

"The statutes establishing the Port District made no specific reference to the tripartite agreement between the two cities and the private parties; and even if the action taken under the tripartite agreement can be regarded as illegal, the bonds were legally issued for authorized municipal purposes and the public project for which the bonds were issued has been transferred and relinquished to, and taken over by, the district, and the payment of the bonds has been assumed by the district under statutory authority, and the statute is not shown to be invalid.

"Even if lands are unconstitutionally included in the district, that does not *ipso facto* invalidate the district or its legal powers, and the remedy is relief of particular lands in the district from illegal taxation at the suit of the land owners. Consolidated Land Co. *et al.* v. Tyler, *et al.,* 88 Fla. 14, 101 So. 280."

As indicated by the authority conferred in the cited statutes and by the facts shown by the records, both in the mandamus actions and in this suit, the public harbor improvement for which the bonds were issued by the cities and afterwards assumed by the district, is essentially permanent and far-reaching in its nature and purpose, and is not merely temporary or expedient for local advantage. The district was not formed for the purpose merely of constructing designated or local roads or bridges or for drainage or similar operations, with authority only to issue bonds for the improvement, to obtain the improvement and to pay the bonds by special assessments or taxation; but the district is established as a continuing governmental agency with adequate express and definite powers and privileges to acquire, maintain and regulate a deep water harbor and port adjacent to the Atlantic Ocean with auxiliary and ad valorem

taxing powers to facilitate interstate and foreign commerce with Florida as well as for local commercial purposes. See Jinkins v. Entzminger, 102 Fla. 167, 135 So. 785; Milheim v. Moffat Tunnel Improvement District, 262 U. S. 710, 43 Sup. Ct. 694, 67 L. Ed. 1194; St. Louis S. & W. R. Co. v. Nattin, 277 U. S. 157, 48 Sup. Ct. 438, 72 L. Ed. 830; Memphis & C. R. Co. v. Pace, 282 U. S. 241, 51 Sup. Ct. 108, 75 L, Ed. 315.

On January 5, 1934, after the original opinions in the mandamus cases were filed, December 7, 1933, taxpayers in different portions of Broward County Port District filed in the Circuit Court for Broward County, Florida, a bill of complaint called by them a "taxpayers' suit to have bonds issued on June 15, 1926, by the City of Hollywood in the aggregate amount of $2,000,000.00, and bonds issued by the City of Fort Lauderdale on September 1, 1926, in the aggregate amount of $2,000,000.00, determined to be null and void and unenforceable obligations of the Broward County Port District, City of Fort Lauderdale and City of Hollywood."

The defendants are Broward County Port Authority, City of Fort Lauderdale, City of Hollywood and several individuals and several corporations who are holders of bonds being herein litigated.

The bill of complaint contains elaborate allegations, similar to the averments of the answers in the mandamus actions, which are designed as a predicate for the contentions made thereon to the effect that the bonds were issued for the benefit of private parties, that benefits to lands assessed have not been legally determined, that the amount of bonds issued is an abuse of legislative power in view of the total debt and the value of the property in the district, all of which is asserted to be violative of Section 1 of the Fourteenth amendment to the Federal Constitution; and that

therefore the bonds are void and taxation for their payment should be enjoined.

In support of contentions that the bonds were issued to serve a private purpose and that taxation to pay the bonds would violate the rights of taxpayers secured by the Fourteenth Amendment, the bill of complaint contains many allegations as to transactions by a private party who with his allied corporations entered into a tripartite agreement with the two cities, and later with the two cities and the port district relative to the construction of the public harbor and port. Such agreements are set out in the bill of complaint.

Under the tripartite agreement the private parties contribute to the public harbor improvement, but have no private ownership interest in or control over the improvement and have no part in its operation or supervision or regulation.

The prayer of the bill is as follows:

"(a) That the aforesaid bonds issued by the City of Hollywood on June 15, 1926, in the aggregate amount of $2,000,000.00 and the aforesaid bonds issued by the City of Fort Lauderdale on September 1, 1926, in the aggregate amount of $1,000,000.00, be declared null and void; that the said Cities of Fort Lauderdale and Hollywood and the said Broward County Port Authority, as the governing body of the Broward County Port District, be relieved and discharged from any and all obligations and liabilities imposed by virtue of the aforesaid bonds and the debt evidenced thereby; that it be judicially determined that the said Cities of Fort Lauderdale and Hollywood, and the said Broward County Port Authority are not liable on said bonds or for the debt evidenced thereby; that it be judicially determined that the said bonds were issued by said municipalities and assumed by said Broward County Port Authority in violation of express and implied provisions of the Constitution

of the State of Florida and the Constitution of the United States herein designated; that it be judicially determined that the said Cities of Fort Lauderdale and Hollywood and the said Broward County Port Authority were prohibited by said constitutional provisions from incurring said debt; that said Cities of Fort Lauderdale and Hollywood and the said Broward County Port Authority be prohibited and enjoined by order of court from paying either principal or interest on said bonds, and from paying principal or interest on the debt evidenced by said bonds.

"(b) The said Cities of Fort Lauderdale and Hollywood and the said Broward County Port Authority be prohibited and enjoined by order of this Court from paying and disbursing any sum of money whatever on interest or principal of said bonds and the debt thereby evidenced.

"(c) The said Cities of Fort Lauderdale and Hollywood and the said Broward County Port Authority be prohibited and enjoined from levying, assessing and collecting any tax upon any and all property subject to taxation for the purpose of paying the principal and interest of said bonds and the debt thereby evidenced.

"(d) That all taxes heretofore levied and assessed by the said Cities of Fort Lauderdale and Hollywood and the said Broward County Port Authority (which remain unpaid and delinquent), for the purpose of paying principal and interest on said bonds and the debt thereby evidenced, be cancelled as a cloud upon the title of the Plaintiff to the lands herein described, and upon the title to lands of all other taxpayers and land owners whose lands are situated within the territorial limits of said municipalities and said Port District.

"(e) That all of said bonds so issued by the said Cities of Fort Lauderdale and Hollywood and so assumed by the said Broward County Port District be cancelled as a cloud

upon the title to lands of the Plaintiff herein described, and upon the title to lands of other taxpayers and land owners whose lands are situated within the territorial limits of said municipalities and said Port District.

"(f) That the holders of said bonds who are made parties to this proceeding and who are subjected to the jurisdiction of this Court be enjoined from instituting and prosecuting any action, suit or proceeding upon said bonds or the debt evidenced thereby.

"(g) That the relief prayed for may be for the use and benefit of all taxpayers and land owners situated within said municipalities and said Broward County Port District.

"(h) That a temporary restraining order be entered in this cause prohibiting and restraining said municipalities of Fort Lauderdale and Hollywood and said Broward County Port Authority from paying or disbursing any moneys for principal and interest on said bonds and the debt thereby evidenced and from levying any tax for the purpose of paying principal and interest on said bonds or on the debt thereby evidenced.

"(i) That a reasonable attorney's fee be allowed Plaintiff's solicitors for services rendered in this cause, which fee shall be determined by the Court, and that the Defendants who receive the benefit of the relief granted herein be ordered to pay the said attorney's fee; that all sums of money now on hand and hereafter received by the said Cities of Fort Lauderdale and Hollywood and the said Broward County Port Authority levied and assessed for the purpose of paying principal and interest on said bonds and the debt thereby evidenced, be imposed with a lien in favor of the Plaintiff's Attorneys for the purpose of securing the payment to said Attorneys a reasonable attorney's fee rendered in said cause."

The prayer of the amended bill is:

"Plaintiffs incorporate herein the entire prayer contained in the original bill of complaint and make the same a part hereof as though fully rewritten herein.

"Plaintiffs further pray that the statutes of the State of Florida, more particularly identified in the bill of complaint, together with all resolutions and ordinances passed pursuant thereto, insofar as the same authorize and direct the imposition and levy of a tax upon Plaintiffs' lands and upon the lands of other taxpayers similarly situated, to pay the principal and interest on the bonds herein described be adjudged, declared and determined to be repugnant to the Constitution of the United States, particularly to Section One of the Fourteenth Amendment thereof."

Decrees *pro confesso* were entered against City of Fort Lauderdale, City of Hollywood, Broward County Port Authority and several nonresident bondholders. Three bondholders moved severally to dismiss the bill of complaint upon grounds going to the equity of the case as stated.

The motions to dismiss the bill of complaint were denied and a temporary injunction was granted. On motion of complainants an order was entered making this proceeding a class suit as to the bondholders. On motion of a bondholder, the suit was transferred to the United States District Court. Later it was remanded to the Circuit Court of the State. An amended bill of complaint was allowed to be filed and on motion of defendant bondholders, the motions to dismiss the bill and amended bill of complaint were granted. Complainant taxpayers appealed and assign as errors:

"1. The Court erred in holding that the statutes of the State of Florida particularly identified in the original and first amended bills of complaint, and all ordinances and resolutions passed pursuant thereto insofar as the same au-

thorize and direct the imposition and levy of a tax upon the lands of the Plaintiffs described in the bill of complaint, and upon the lands of other taxpayers similarly situated, to pay the principal and interest on the bonds described in the original and first amended bills of complaint, were not repugnant to Section One of the Fourteenth Amendment to the Constitution of the United States.

"2. The Court erred in holding that the bonds described in the original and amended bills of complaint were issued for a lawful public purpose.

"3. The Court erred in refusing to hold that the bonds described in the original and first amended bills of complaint were issued for a private purpose and for the purpose of aiding and assisting a private enterprise.

"4. The Court erred in refusing to hold that the levy of a tax on the lands of the Plaintiffs and other taxpayers similarly situated for the purpose of paying the bonds described in the original and first amended bills of complainant deprived the Plaintiffs of their property without due process of law and denied to the Plaintiffs the equal protection of the laws.

"5. The Court erred in its order of June 9th, A. D. 1934, dismissing Plaintiff's original and first amended bills of complaint."

The appeal could properly be disposed of by an adjudication that the taxpayer complainants have not proceeded as this court indicated they should proceed if they have a justiciable cause of complaint against the taxation of their lands in the district on the ground of a violation of organic property rights. See State, *ex rel* Davis, v. Ryan, ___ Fla. ___, 151 So. 416, text 418, filed before this suit was instituted. The same course was stated to be proper in the opinion on rehearing, not yet reported, viz.: that "if lands are unconstitutionally included in the district * * * the remedy is

relief of particular lands in the district from illegal taxation at the suit of the land owners. Consolidated Land Co., *et al.*, v. Tyler, *et al.*, 88 Fla. 14, 101 So. 280."

This theory of relief in proper cases is not sought in the pleadings or in the arguments of counsel for complainants. However, contentions made by counsel have been carefully considered and essential features thereof will be briefly discussed.

The legal existence of the district is not challenged by the State; and the validity of the bond issues by the cities and the assumption of the bonds by the district under statutory authority have been sustained upon averments in answers filed in the mandamus actions referred to above that are similar to the allegations of the bill of complaint in this case. See State, *ex rel.* Davis, v. Ryan, ...... Fla. ......, 151 So. 416, 418, 718, and unreported opinion on rehearing where this Court held that the port or harbor is wholly a public improvement involving no private control or ownership; and that Section 10 of Article IX of the Florida Constitution was not violated in issuing or assuming the bonds involved in this case. The principles announced in 20 Wallace 655 do not operate to validate the bonds in this case in view of the statutes, the public nature of the improvement and the action taken thereunder in issuing the bonds.

The first amended bill of complaint contains the following allegation:

"That the municipal bonds herein described were issued for the primary purpose of aiding and assisting J. W. Young and his Hollywood Companies to carry out their vast real estate development project which was calculated to be of great private gain to said J. W. Young and his Hollywood Companies."

Such allegations and others pertinent thereto do not show illegality in the bonds when the statutes and the tripartite agreements referred to as being illegal and the nature of the public improvement are considered. See West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361.

The statutes and not the tripartite agreement referred to controlled the issue of the bonds by the cities and the assumption of the bonds by the district. The bonds have been confirmed as binding obligations upon the district, though lands illegally in the district may not be taxed for bond payments if such taxation violates organic rights which have not been lost by acquiescence or otherwise.

A new enterprise requires the initiative of someone, and transactions in promoting public improvements do not necessarily involve illegality merely because the promoters are specially benefited; for public improvement projects are designed to be beneficial, and the mere fact that some persons normally and fairly profit more than others, does not render illegal an undertaking that is duly authorized. Illegality or fraud in any transaction may be remedied by appropriate procedure duly invoked; and rights against wrongdoers may be lost by delay or acquiescence.

Allegations in the bill of complaint as to the activities of private parties in initiating the harbor improvement, and as to the purpose and effect of the tripartite agreement between two cities and the private parties and later between the cities, the port district and private parties relative to the construction of the harbor improvement, do not render invalid bond issues which were authorized and confirmed by statutes for the lawful and authorized public purpose when the tripartite agreement complained of in legal effect operates as a contribution by the private parties of property to be used in the public improvement without any rights of ownership or control in the public improvement by the

contributors or any private parties or interests and when the activities of private parties complained of were either acquiesced in or not challenged before the bonds were sold to *bona fide* purchasers under legislative authority.

If particular property cannot legally be taxed or is' excessively taxed to pay the bonds assumed by the district under statutory authority, because such tax would violate unwaived organic rights of the property owners that are secured by the State and Federal Constitutions, appropriate judicial relief may be duly invoked.

It is not clearly shown that in authorizing and validating the bond issues there has been a palpable abuse of legislative power as in Paul v. Long Branch & L. S. R. & B. D., *et al.,* 83 Fla., 706, 92 So. 687, where the validity of the bonds was challenged before they were issued. See also Stewart v. New Smyrna-Coronado Beach Specl. R. & B. Dist., *et al.,* 101 Fla. 823, 132 So. 636.

It does not clearly appear that the expense of the public improvement may not lawfully be put by statute upon the statutory governmental district; and if particular property in the district may not lawfully be taxed for the bond payments or if any such property be taxed excessively so as to violate organic property rights, the owners of the property may appropriately assert their rights to relief from taxation, as in Consolidated Land Co. v. Tyler, 88 Fla. 14, 101 So. 280; Myles Salt Co. v. Iberia Drainage Dist., 239 U. S. 478, 36 Sup. Ct. 204, 60 L. Ed. 392; Road Imp. Dist. No. 1, v. Missouri P. R. Co., 274 U. S. 188, 47 Sup. Ct. 563, 71 L. Ed. 992; Kans. City So. Ry. v. Road Imp. Dist. No. 6, 256 U. S. 658, 41 Sup. Ct. 604, 65 L. Ed. 1151. See also C. H. & N. R. R. Co v. Welles, 78 Fla. 227, 260 U. S. 8, 43 Sup. Ct. 3, 67 L. Ed. 100, as to overlapping taxing units.

The decree dismissing the bill of complaint is modified so as to grant the motion to dismiss if the complainants do

not duly amend the bill of complaint so as to state a cause for relief that is appropriate to taxpayers whose property in the district may be shown to be illegally or excessively taxed.

It is so ordered.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, and BROWN, J. J., concur.

BUFORD, J., concurs specially.

BUFORD, J. (concurring specially).—I concur in what has been said in the majority opinion, but I do not think that the decree dismissing the bill of complaint should be modified.

The theory upon which the bill of complaint is based is not that any particular tract of land owned by the complainants, or either of them, is because of its peculiar location or character such that it should be excluded from the operation of the statute creating the district. The theory upon which the complaint is based is that the statutes authorizing the issuance of the bonds in the first place by the municipality as well as the statutes creating the harbor improvement district and authorizing the assumption of the bonded debt incident to the issuance of bonds by the municipalities for the purpose of constructing the harbor involved are all void insofar as they authorize the levy of tax to pay the bonds.

The complainants saw fit to join together in a class suit with such a combination as to bring all property within the district into the class for which they sued. A complainant is a taxpayer of the City of Fort Lauderdale; another a taxpayer in the Town of Dania and another a taxpayer in the remote Western rural part of the District. Every taxpayer in the District, and all property in the District, falls in the classification of one or the other of these taxpayers and of the property of such taxpayers which is here sought to be relieved of the tax.

Therefore, the bill of complaint could not be amended so as to make it a bill of complaint to test the right or validity of the assessment made under the statute against the peculiar property of either of these complainants because of the peculiar location or condition of the property without by such amendment changing the whole theory of the suit and presenting entirely different questions of law and fact from those involved under the allegations of the original bill.

TERRELL and BROWN, J. J., concur.