T. A. COSBY v. JUMPER CREEK DRAINAGE DISTRICT, a Public Corporation

3 So. (2nd) 356
En Banc
Opinion Filed July 8, 1941
Rehearing Denied August 1, 1941

*Carroll W. Fussell,* for Appellant;

*Phillips, Thompson & McMullen,* for Appellee.

CHAPMAN, J.—On September 23, 1939, the Jumper Creek Drainage District filed its bill of complaint in the Circuit Court of Sumter County, Florida, against T. A. Cosby, *et al.,* for the purpose of foreclosing delinquent drainage taxes against the N½ of NW¼, Section 34, Tp. 21, South, Range 23, East, located in the Jumper Creek Drainage District of Sumter County, and the plaintiff asserted a lien against the above described eighty acres for the approximate sum of $2,763.43 as delinquent drainage taxes.

The Jumper Creek Drainage District was created and established on December 4, 1922, by a decree of the circuit court under the provisions of Chapter 6458, Acts of 1913, Laws of Florida. The district by resolution levied a tax in the total sum of $940,500.00 and it was apportioned to the various lands situated in the district and each tract was assessed in proportion to the benefits received, as determined by the officials of the district, and the levy was made on the 31st day of October, 1925.

On April 1, 1940, T. A. Cosby answered the bill of complaint and recited that on July 20, 1925, he accepted a mortgage on the 80 acres *supra* in the sum of $1,107.90 and the same was recorded among the public records of Sumter County on July 24, 1925, in Mortgage Book 11 at page 455, appearing in the office of the Clerk of the Circuit Court of Sumter County. Prior to the acceptance of the mortgage, the answering defendant consulted the officers of Jumper Creek Drainage District and the plan of reclamation was discussed and the proposed benefits flowing therefrom to the lands considered as applicable to the lands *supra*. The drainage plans disclosed a proposed ditch from the main ditch or canal on to and over the lands *supra,* and when completed by the district would make the 80 acres of land accessible and usable for farming purposes and in this manner benefits would accrue to the property. The answering defendant relied upon the representations as made by the officials of the Jumper Creek Drainage District, and on July 20, 1925, accepted a mortgage and first lien on the property *supra.*

The answer recites further that the 80 acres of land involved is surrounded by a natural high ridge of land which affords a natural barrier, thereby preventing overflow waters and ponds thereon from flowing or draining from the 80 acres and that without the construction of the ditch the lands could not be used for agricultural purposes; that the ditch was never constructed, or the promises of the officers of the Jumper Creek Drainage District observed or carried out, and without the construction of said ditch, which had theretofore been promised, no benefits whatsoever accrued to said 80 acres of land and the assessment of $2,763.43 against said 80 acres of land is unjust, ar-

bitrary, discriminatory and in effect is taking property of the answering defendant without due process of law and the arbitrary assessment imposes a burden which in effect means the denial of the equal protection of the law.

The lower court entered an order sustaining a motion to strike the material allegations appearing in paragraphs 2, 3, 4, 5, 6 and 7 of the answer and entered a final decree for the plaintiff and decreed the sale of the 80 acres *supra* for the payment of the $2,763.43, and an appeal has been perfected to this Court.

Counsel for appellant contends that the allegations of the stricken answer tendered issues of law and fact, viz.: that the delinquent drainage taxes in the total sum of $2,763.43, asserted as a lien against the 80 acres *supra* is predicated on invalid assessments because they were arbitrary, discriminatory, oppressive, impose a burden which in effect is a denial of the equal protection of the law and deprives him of property without due process of law. The appellant was denied the right and privilege of adducing testimony to sustain the material allegations of the stricken answer.

The case of Willis v. Special Road & Bridge District No. 2, Osceola County, 73 Fla. 446, 74 So. 495, involved Chapter 6868, Acts of 1915, providing a road district and authorizing the issuance of bonds. The case was before the Court on the validation of the bonds, when this Court in part said:

"A purpose of the statute authorizing Special Road and Bridge Districts to be formed in counties is to avoid unfair tax burdens upon persons and property so remote from roads constructed by general county taxation as to receive no advantage therefrom com-

mensurate to their tax contributions for such purposes. In this view, the statute contemplates the formation of districts with some fair reference to the advantages accruing therefrom to the persons and property bearing the tax burdens assumed for the construction and maintenance of such roads and bridges. Of course considerable latitude was contemplated and should be allowed in forming districts to meet the varying situations that may arise; but an arbitrary inclusion of large areas of territory in a district for purposes of special taxation, when such territory is very remote and perhaps disconnected from the location of roads on which the greater part of the bond money is to be expended, so as to unreasonably and arbitrarily impose taxes upon property and persons, is clearly a violation of the intent and purpose of the statute; and relief against such arbitrary action taken under the statute may be had in the courts by due course of procedure. . . ."

The validity of Chapter 8888, Special Acts of 1921, creating a road district situated in Clay County, Florida, and authorizing special assessments and the issuance of bonds for the construction of the road therein named, was involved in the case of Paul Brothers v. Long Branch & L. S. R. & B. Dist., 93 Fla. 706, 92 So. 687, and the Act was held arbitrary and oppressive as a tax burden on property of small or limited value, when this Court in part said:

"Even if Chapter 8888 does not contain distinct and unrelated provisions upon more than one subject and matter properly connected therewith in violation of Section 16, Article III, of the Constitution, and does not violate Sections 20 and 21, Article III of the Constitution in the provisions regulating the practice of

courts of justice, if not also in other provisions, it is obvious that the essential provisions of the Act are so arbitrary and oppressive as tax burdens upon property of small value considered with reference to the multiplied enormous special assessment authorized to be made against it, as that the statute is a palpable abuse of the police and taxation powers of the State that will inevitably deprive the landowners of their property in violation of the State and Federal Constitutions. This makes the entire Act invalid and unenforceable."

This Court had before it and considered benefits and advantages to a drainage district in the case of Martin v. Dade Muck Land Co., 95 Fla. 530, 116 So. 449, when it in part said (tax pp. 576-8):

"Where a special taxing district is formed for local improvements, the special assessments may extend throughout the district and are usually much less burdensome and the benefits are more general and indirect. The taxing district system of special assessments contemplates a wider and more general distribution of the assessment burden, having relation to ultimate general public benefits and advantages to the district as a whole. In this, as in all other cases, the improvement contemplated should be reasonable and appropriate for a lawful public purpose and the special assessment as made should be reasonable in amount and fairly apportioned according to benefits. Good faith and substantial justice and not exact equality of benefits and burdens are required.

". . . The amount of the special assessment should not substantially exceed the benefits that reasonably may be expected to accrue to the property specially assessed; and the assessment as made should not be

arbitrary or unjustly discriminating in view of all pertinent conditions; and the benefits to the property assessed should have a reasonable basis in existing facts or reasonable expectations and should not rest upon mere vague conjecture or prophecy. . . .

". . . In the absence of a flagrant abuse of legislative power or of purely arbitrary legislative action, which invades organic property rights, the State may by statute establish drainage district and tax lands therein for local improvements; and none of such lands may escape appropriate taxation for the local improvement, solely because they will not receive *direct* or exactly *equal* benefits, where no arbitrary and oppressive action is clearly and fully shown. . . ."

See Consolidated Land Co. v. Tyler, 88 Fla. 14, 101 So. 280.

The rule applied by this Court as shown by its previous decisions *supra,* is sustained by other jurisdictions. See 17 Am. Jur. par. 89, pp. 831-2; 19 C. J. par. 261, pp. 745-6. The rule is similarly expressed in the case of Myles Salt Co. v. Iberia Drainage Dist., 239 U. S. 478, 60 L. Ed. 392, 36 Sup. Ct. 204, LRA 1918E, p. 190, viz.:

"It is to be remembered that a drainage district has the special purpose of the improvement of particular property and when it is so formed to include property which is not and cannot be benefited directly or indirectly including it only that it may pay for the benefit to other property, there is an abuse of power and an act of confiscation. Wagner v. Baltimore, ante, p. 207. We are not dealing with motives alone but as well with their resultant action; we are not dealing with disputable grounds of discretion or disputable degrees of benefit, but with an exercise of power determined by

considerations not of the improvement of plaintiff's property but solely of the improvement of the property of others—power, therefore, arbitrarily exerted, imposing a burden without a compensating advantage of any kind."

Assuming that the appellant, defendant below, had or possessed a constitutional right to show or establish by competent testimony a lack or want of benefits to his property by an unconstitutional levy on the part of the Jumper Creek Drainage District, then, as a matter of law, it is contended, he cannot be heard because seventeen years have intervened and he is now guilty of laches. It is not clear from the record the exact date the plaintiff's alleged cause of action accrued, but the first levy was made in the Fall of 1925, and annually thereafter, and the suit was filed in the lower court on September 23, 1939. It is therefore equitable for the plaintiff to delay action to recover delinquent benefits from 1926 to 1939, but inequitable for the owner of the property or the person claiming an interest therein to assert a defense thereto. The officers of the Drainage District told the appellant that a ditch would be dug or cut across the land and the water drainage and the property rendered suitable for agricultural purposes, but this pledge or commitment was not carried out. The officers of the drainage district, as shown by the answer, knew of this outstanding unfulfilled promise and of the general topography of the 80-acre tract and for several years delayed the bringing of suit. The broken and unredeemed promise or agreement of the officers of the drainage district, as set up in the stricken answer, coupled with their delay over the years in refusing or neglecting to institute foreclosure on the alleged delinquent drainage

tax assesment, considered in connection with the stricken defense, is, as applied to the facts here involved, not such a delay by the appellant as amounts to laches. The drainage district should not be allowed to profit by its wrong conduct—it cannot in a court of equity assume inconsistent positions. The appellant presented his defense in the form of an answer after suit was filed and prior thereto had relied on the promise of the officers to complete the drainage program.

It is our conclusion that the appellant should have been permitted to adduce testimony in support of the allegations of the stricken answer and on final hearing when the testimony of the respective parties was before the Court, the law as enunciated herein should have been applied thereto. The decree appealed from is hereby reversed for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

BROWN, C. J., WHITFIELD, TERRELL and BUFORD, J. J., concur.

THOMAS, J., dissents.