155 So.2d 620 (1963)
Arthur G. CARSON, Myrtis E. Carson, et al., Appellants,
v.
The CITY OF FORT LAUDERDALE, Florida, a municipal corporation of the State of Florida, Appellee.
No. 3532.
District Court of Appeal of Florida. Second District.
August 7, 1963.
*621 Carl V. Wisner, Jr., Fort Lauderdale, for appellants.
Ronald B. Sladon, George G. Dickson and Dermott J. Doyle, Fort Lauderdale, for appellee.
WHITE, Judge.
Arthur G. Carson and wife and numerous other plaintiffs have appealed an order dismissing with prejudice their twice amended complaint for declaratory and injunctive relief against the City of Fort Lauderdale. The plaintiffs sought to restrain the defendant municipality from assessing against plaintiffs' lands the cost of installing storm sewers within certain proposed storm sewer districts pursuant to resolution.
The amended complaint sets forth specific averments of fact in support of plaintiffs' first contention that their lands cannot be benefitted directly or indirectly by the proposed sewers and that the imposition of special assessments to underwrite the cost of such installations would deprive plaintiffs of property without due process of law and deny them equal protection of the laws in contravention of Amendment XIV of the Constitution of the United States. In support of their legal position on these points the plaintiffs cite the U.S. Supreme Court decision of Myles Salt Company v. New Iberia & St. Mary Drainage District, 239 U.S. 478, 36 S.Ct. 204, 60 L.Ed. 392 hereinafter discussed.
The amended complaint includes allegations that the surface of the proposed drainage districts is high, between 12 and 20 feet above the normal water table; that the districts are residential and fully sodded; that rain does not drain from the houses to the streets but falls onto the sod; that the run-off coefficient is low; that a stratum of coarse dry sand lies between the surface and the water table; that the percolation coefficient is extremely low; and generally, that the natural drainage from plaintiffs' properties is adequate. Plaintiffs also allege that their parcels of land are remote from any of the proposed sewer lines and that the defendant's classification of these parcels in the western or "superior heritage" on the same basis as those parcels lying to the east or "inferior heritage" of the proposed districts is unreasonable and arbitrary and therefore an improper classification within the constitutional meaning of that term.
In Myles Salt Company v. New Iberia & St. Mary Drainage District, supra, it was held that high land which cannot be benefitted directly or indirectly by a proposed drainage system may not, consistent with due process of law, be included within a district for the purpose of levying drainage taxes. The court said:
"It is to be remembered that a drainage district has the special purpose of the improvement of particular property, and when it is so formed to include property which is not and cannot be benefitted directly or indirectly, including it only that it may pay for the benefit of other property, there is an abuse of power and an act of confiscation. * * *"
This prerequisite of benefits to valid special assessments is a general and fundamental rule. In Cosby v. Jumper Creek Drainage District, 1941, 147 Fla. 705, 3 So.2d 356, *622 suit was brought to foreclose delinquent assessments. The defendant's answer included an allegation that his property was not directly or indirectly benefitted by the drainage district. The chancellor struck this and other portions of the answer. The Supreme Court of Florida reversed to permit the defendant to adduce testimony in support of specific factual allegations contained in stricken portions of the answer. The court observed that it is an abuse of power to include in a drainage district property not directly or indirectly benefitted so as to make the owner pay for benefits to other property. Of course an allegation of no benefits is not sufficient when alleged by way of conclusion without accompanying allegations of ultimate fact. Ideal Farms Drainage District v. Certain Lands in Said District etc., 1943, 153 Fla. 265, 14 So.2d 416.
In Consolidated Land Company v. Tyler, 1924, 88 Fla. 14, 101 So. 280, the court held that where a special improvement district attempts to include property that cannot be benefitted by the contemplated improvement, the courts will give effect to the private rights secured by the Constitution and grant such relief as the circumstances justify. See also Martha Bright Farms, Inc. v. Broward Port Authority, 1934, 117 Fla. 361, 158 So. 70, 76, appeal dismissed, 293 U.S. 531, 55 S.Ct. 209, 79 L.Ed. 640; Martin v. Dade Muck Land Company, 1928, 95 Fla. 530, 116 So. 449, 464.
Is the plaintiffs' amended complaint so framed as to invoke the constitutional law enunciated in the foregoing decisions? As to this first aspect of plaintiffs' complaint  the allegation of no benefits  plaintiffs submit that they have pleaded a justiciable case by specific allegations of material fact. We agree. In our opinion the complaint offers a fact pattern which calls for responsive pleading. It follows that the defendant's motion to dismiss was improvidently granted insofar as it pertains to plaintiffs' assertion that their properties could not be benefitted by the proposed storm sewers. Although this appeal is disposable without further comment, we nevertheless advert to a limited treatment of plaintiffs' second ground for relief.
Plaintiffs' second or alternative ground for relief is that the proposed assessments would impair the defendant's obligation of contract in view of the following pleaded facts. In 1947, after disastrous floods within the defendant city, the defendant, pursuant to Fla. Stat. Section 167.431(1), F.S.A., proposed by resolution to levy a 10% public utility tax the proceeds of which would be deposited in a "Public Improvement Fund." This fund was designated to be expended for improvements and extensions of the city's storm and sanitary sewer systems and for repairs and extensions of public streets. The resolution provided for its submission to the qualified electors of the city by referendum.[1] The resolution *623 was approved in a special election held October 27, 1947.
Plaintiffs allege that in the twelve year period ending in 1959 the defendant collected $6,718,737.00 from the aforesaid tax but that only $57,456.00 was expended for storm and sanitary sewers; that the resolution establishing the "Public Improvement Fund" supported by the utility tax became a binding contract when approved by the electors;[2] that the defendant impaired the obligation of said contract in that the proceeds of the tax, designated for specific purposes, were wrongfully encumbered and diverted to other uses particularized in the complaint; and plaintiffs allege that the described acts were an abuse of power amounting to confiscation, precluding the defendant from levying the special assessments now sought to be imposed. The complaint includes a prayer for an accounting and mandatory injunction, appointment of a receiver if necessary, and for such other or different relief as the court might deem proper in the circumstances.
The defendant attacks this part of the complaint by asserting arguendo that clearly there was no contractual obligation; that the city had legal authority to levy the utility tax without referendum; that the city did not relinquish its right to levy assessments against plaintiffs' properties benefitted by the proposed improvements, and that plaintiffs are chargeable with laches in waiting so long before protesting the actions of the defendant. These defensive arguments, however, partake of the old "speaking demurrer." In this connection attention is directed to Fletcher v. Williams, Fla.App. 1963, 153 So.2d 759, 762 wherein the court said:
"[I]f a complaint * * * states a cause of action in accordance with either statutory, common law or equitable principles, the complaint will be sufficient to withstand a motion to dismiss it. If a defendant elects to assert an affirmative defense as a bar to the action, such defense must be pleaded in an answer filed in response to the complaint. Affirmative defenses may not be asserted as grounds for a motion to dismiss the complaint, even though the availability of the defense as a bar to the action may appear on the face of the complaint." (Emphasis added) See also Tuggle v. Maddox, Fla. 1952, 60 So.2d 158; Stone v. Stone, Fla.App. 1957, 97 So.2d 352.
We have indicated that the order dismissing the amended complaint must be reversed so as to require additional defensive pleading on the issue of benefits vel non. Upon further proceedings before the chancellor it may or may not be necessary to resolve the interesting contract theory of plaintiffs' case. If such need arises the chancellor may proceed anew to determine the merits of plaintiffs' position. We are not necessarily confronted with this problem on appeal, and we do not now undertake to decide it.
Having carefully considered the lengthy amended complaint, complete with exhibits, we hold that it poses factual challenges which call for an answer. In conclusion it may not be amiss to observe that the order here involved states no specific reason for *624 the granting of the motion to dismiss. Although such statement is not required, it could be of much assistance in reviewing questions of this kind.
The order of dismissal is reversed and the cause remanded for proceedings not inconsistent with this opinion.
Reversed.
SHANNON, Acting C.J., and AKRIDGE, WILLIAM G., Associate Judge, concur.
NOTES
[1] Form of ballot as prescribed by resolution:
 "BALLOT
 SPECIAL ELECTION
 October 27, 1947

Proposal: City of Fort Lauderdale proposes to enact an ordinance levying a ten per cent (10%) utility tax against each and every purchaser or person using electricity, natural or bottled gas (natural, liquified petroleum gas or manufactured), water service, telephone and telegraph service, or other public utility within the corporate limits, said 10% of the monthly charges to be collected by the seller from the consumer at the time of payment of the monthly utility bill, and turned over to the City for the use of the City, exempting Federal, State, County or Municipal governments, commissions or agencies from the payment of such tax. The moneys so collected will be placed in a "Public Improvement Fund", and the moneys in such fund, together with the proceeds of such tax as collected may be pledged for an issue of Utility Revenue Bonds. The moneys realized from such Utility Revenue Bonds or the tax money itself, as collected and placed in such "Public Improvement Fund", shall be used to create a Revolving Public Improvement Fund to pay cost of installing sanitary sewers and storm sewers in the City of Fort Lauderdale, and for repairs, extension and improvements to public streets. Such utility taxes as collected, or moneys received from special assessment liens levied against property specially benefited by such improvements may be used to pay off such Utility Revenue Bonds, if issued, or to replenish the Revolving Public Improvement fund.
Instructions to Voters: If you favor the proposal, indicate by marking an "X" mark in the space to the left of the words "For 10% Utility Tax". If you are not in favor of the proposal, place an "X" mark in the space to the left of the words "Against 10% Utility Tax".
 [] For 10% Utility Tax.
 [] Against 10% Utility Tax."

[2] Plaintiffs' citations include 38 Am.Jur., Municipal Corporations, Section 501; 10 McQuillin on Municipal Corporations (3rd Ed.), Section 29.03.